NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0159n.06

No. 21-3704

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| ROXANA ELIZABETH AMAYA-HERNANDEZ, | ) | **FILED** Apr 14, 2022 DEBORAH S. HUNT, Clerk |
|  | ) |  |
| Petitioner, | ) | ON PETITION FOR REVIEW OF |
|  | ) | AN ORDER OF THE BOARD OF |
| v. | ) | IMMIGRATION APPEALS |
|  | ) |  |
| MERRICK B. GARLAND, Attorney General, | ) | **OPINION** |
|  | ) |  |
| Respondent. | ) |  |
|  | ) |  |

Before: SUHRHEINRICH, MOORE, and CLAY, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** Roxana Elizabeth Amaya-Hernandez petitions for review of the Board of Immigration Appeals' (BIA) determination that she is ineligible for asylum or withholding of removal. Because the BIA reasonably determined that Amaya-Hernandez did not establish the requisite nexus between her proffered social group and her persecution, we **DENY** the petition for review.

## I. BACKGROUND

In 2016, Amaya-Hernandez lived with her grandmother and two-year-old son in Honduras. Administrative Record (A.R.) at 84, 88 (Hr'g Tr. at 12, 16). In September of that year, a MS-13 gang member approached Amaya-Hernandez and demanded extortion money. A.R. at 86 (Hr'g Tr. at 14). Amaya-Hernandez paid him 500 lempiras, a payment she made two more times in October. A.R. at 86–87 (Hr'g Tr. at 14–15). A month later, Amaya-Hernandez received a note in

which the gang members demanded payment of 20,000 lempiras and threatened to kill her and her son if she did not pay. A.R. at 87 (Hr'g Tr. at 15). Two men later told her that they would follow through with the threat if they did not receive payment. A.R. at 90 (Hr'g Tr. at 18).

Amaya-Hernandez did not report the threats to the police because the gang members told her that things would be "worse" if she did. A.R. at 91 (Hr'g Tr. at 19). She had reason to believe that threat; the same gang had killed her neighbor Jose's son after he had reported similar extortion. A.R. at 91–92 (Hr'g Tr. at 19–20). Without family in Honduras—apart from her grandmother and a sister who was often away working on a cruise ship—Amaya-Hernandez felt that she had no one to protect her. A.R. at 87, 89–90 (Hr'g Tr. at 15, 17–18).

In late November 2016, Amaya-Hernandez and her son entered the United States. A.R. at 84 (Hr'g Tr. at 12), 276 (Notice to Appear at 1). Because Amaya-Hernandez did not have a valid visa or entry document, the Department of Homeland Security initiated removal proceedings in August 2017.[1] *Id.* Amaya-Hernandez conceded removability but sought asylum, withholding of removal, and Convention Against Torture protection. A.R. at 251 (Resp't Pleading at 1). After a hearing, an Immigration Judge found Amaya-Hernandez removable and ineligible for relief. A.R. at 56 (Oral Decision of Immigration Judge at 9). The BIA affirmed, agreeing with the Immigration Judge that Amaya-Hernandez's proposed particular social groups were not cognizable. A.R. at 5 (BIA Decision at 2). The BIA further found that Amaya-Hernandez did not establish a nexus between any of her proposed particular social groups and her alleged persecution and that she did

---

[1]Because the BIA severed Amaya-Hernandez's son's case from his mother's case, Amaya-Hernandez's son is not a party to this appeal. A.R. at 4 (BIA Decision at 1 n.1).

not show that the government was unable or unwilling to control the gang that extorted her. A.R. at 5–6 (BIA Decision at 2–3). Amaya-Hernandez timely filed her petition for review.

## II. ANALYSIS

A person seeking asylum must be a "refugee,"—one who is persecuted or has a "well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Stserba v. Holder*, 646 F.3d 964, 972 (6th Cir. 2011) (quoting 8 U.S.C. § 1101(a)(42)(A)). To establish refugee status, an asylum applicant must show "a link between the acts of persecution and the petitioner's protected-group identity." *Id.; see also* 8 U.S.C. § 1158(b)(1)(B)(i) (requiring that an asylum applicant "establish that race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant"). Similarly, "applicants for withholding of removal under 8 U.S.C. § 1231(b)(3) must demonstrate that a protected ground was at least one reason for their persecution." *Guzman-Vazquez v. Barr*, 959 F.3d 253, 274 (6th Cir. 2020). Without evidence connecting the abuse to a particular social group, general mistreatment at the hands of a gang does not sufficiently establish the requisite link between protected-group identity and persecution. *See Bonilla-Morales v. Holder*, 607 F.3d 1132, 1137–38 (6th Cir. 2010). The BIA found that Amaya-Hernandez did not present such evidence of a nexus, A.R. at 5 (BIA Decision at 2), and thus that she "did not demonstrate eligibility for asylum or withholding of removal." A.R. at 6 (BIA Decision at 3).

When the BIA issues a separate opinion that does not summarily affirm the Immigration Judge's decision, we review the BIA's decision as final. *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). In addition, we may review any of the Immigration Judge's reasoning that the BIA

adopts. *Id.* We review de novo the BIA's resolution of legal questions, affording deference to its interpretation of ambiguous Immigration and Nationality Act provisions. *Stserba*, 646 F.3d at 971. We may reverse the Immigration Judge's and BIA's factual findings "only if the decision was 'manifestly contrary to law,' 8 U.S.C. § 1252(b)(4)(C), that is, if the evidence 'not only supports a contrary conclusion, but indeed *compels* it.'" *Haider v. Holder*, 595 F.3d 276, 281 (6th Cir. 2010) (quoting *Ouda v. INS*, 324 F.3d 445, 451 (6th Cir. 2003)).

Before the Immigration Judge and the BIA, Amaya-Hernandez based her asylum claims upon four particular social groups: "Honduran women," "single Honduran women," "women who are head of household," and "young women without male protection in the home." A.R. at 5 (BIA Decision at 2). In her petition for review of the BIA's decision, Amaya-Hernandez focuses on gender as the basis for her particular social group, and it is unclear whether she abandoned the other three social groups as bases for her claims. In any event, Amaya-Hernandez has not established a link or nexus between any protected-group identity and the alleged acts of persecution.

Amaya-Hernandez testified that she "believe[d]" that gang members targeted her because she "was a single mother" living with only her son and her grandmother and because she "didn't have a man to protect" them. A.R. at 87 (Hr'g Tr. at 15). The Immigration Judge and the BIA reasonably found that she did not present any evidence to support that belief. In fact, Amaya-Hernandez presented evidence that the gang extorted her for its financial gain, rather than because of her membership in a particular social group. For example, she stated in her declaration that the gang member who initially approached her told her that he would start "charging" her because she "worked [at] a known restaurant." A.R. at 133 (Amaya-Hernandez Decl. at 1). In addition,

4

Amaya-Hernandez presented the testimony of her neighbor Jose—a man—who averred that the gang had similarly extorted him. A.R. at 157 (Ochoa Decl. at 1). Testimony showing that the gang had targeted Amaya-Hernandez or others for gender-neutral reasons would not have been fatal had Amaya-Hernandez presented other evidence to support a mixed-motives withholding claim. *See Guzman-Vasquez*, 959 F.3d at 274. But Amaya-Hernandez points to no testimony establishing that gender was even one of the factors motivating the gang's extortion. *See id.; Stserba*, 646 F.3d at 972–73.

Nor does Amaya-Hernandez's country-conditions evidence establish the requisite link between her particular social group and the persecution by the gang. Amaya-Hernandez cites reports indicating that violence against women, including femicide, domestic violence, and gang-related violence, pervades Honduran society. A.R. at 180–86 (Immigration and Refugee Board of Canada Report at 37–38, 41–45), 192–93 (Inter-American Commission on Human Rights Report at 52–53). "But widespread crime and violence does not itself constitute persecution on account of a protected ground." *Zaldana Menijar v. Lynch*, 812 F.3d 491, 501 (6th Cir. 2015). These reports may suggest that violence against women is horribly prevalent in Honduras, but they do not establish that gangs target women—whether single or head of household—*because* they are women. Amaya-Hernandez presents no other evidence linking her gender to the gang's motives for extortion.

The BIA reasonably determined that Amaya-Hernandez did not show that she was persecuted "on account of" her "membership in a particular social group." 8 U.S.C. § 1101(a)(42)(A). This requirement is dispositive of Amaya-Hernandez's asylum and withholding claims, so we need not consider the BIA's other bases for denying asylum and withholding of

removal. *See Bonilla-Morales*, 607 F.3d at 1137, 1138. In addition, Amaya-Hernandez abandoned her Convention Against Torture claim before the BIA and does not raise it before us. A.R. at 6 (BIA Decision at 3). Accordingly, we **DENY** the petition for review.